UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TIMOTHY FLINCHUM, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 15-253-DCR |
| V. | ) | |
| CITY OF BEATTYVILLE, et al., | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs Timothy Flinchum, Vanessa Flinchum, and J.M.F.F. allege that the defendants violated their constitutional rights by failing to properly investigate the death of a family member, Jordan Flinchum, and by failing prosecute the individual who caused his death. [Record No. 1] They also assert state law claims arising out of the same alleged misconduct. [*Id*.] This matter is pending for consideration of the motion to dismiss or, in the alternative, for judgment on the pleadings filed by Defendants City of Beattyville, City of Beattyville Police Department, Greg Brandenburg, and John Smith. [Record No. 20] The defendants argue that they did not owe the plaintiffs a duty to investigate the underlying incident, and that the state law tort claims lack merit. For the reasons outlined below, the defendants' motion will be granted.

**I.**

Jordan Flinchum was killed in a collision on a Kentucky highway on February 14, 2014. [Record No. 1, ¶ 11, 19] Defendant Greg Brandenburg, Chief of Police for the City of Beattyville, responded to the accident call and investigated the incident. [*Id*. at ¶ 19] The

plaintiffs allege that the driver of the vehicle that struck Flinchum (Luke Phillips) was under the influence of intoxicating substances, had no driver's license or insurance, and was driving recklessly at the time of the collision. [*Id*. at ¶ 12]

The plaintiffs also allege that Brandenburg failed to properly "investigate and report the circumstances of the crash causing [Flinchum's] death . . . ." [*Id*. at ¶ 21] They further suggest that Brandenburg failed to properly preserve evidence relating to the crime. [*Id*. at ¶ 19] Additionally, the plaintiffs contend that Brandenburg "failed to bring proper legal proceedings against Luke Phillips after discovering that he had violated Kentucky law in the course of the crash and had oxycodone in his blood at the time of the crash. . . ." [*Id*. at ¶ 21] Regarding the other defendants, the plaintiffs assert that Brandenburg lacked the necessary training and that the defendants "failed to take preventative and remedial measures to guard against the effects of deficient training." [*Id*. at ¶ 25]

**II.**

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) and motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are reviewed in the same manner. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Because the classification of the motion has no legal effect, the Court will evaluate the pleading as a motion to dismiss.[1]

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] Because the motion will be considered under motion to dismiss standards, the Court will not consider the exhibits that the parties attached to their pleadings. Moreover, these exhibits are not necessary to decide the defendants' motion.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

Further, in considering a Rule 12(b)(6) motion, the Court is required to "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990).  However, the Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts as alleged. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that, in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").  Thus, Rule 12(b)(6) essentially "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery." *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. 2009).

**III.**

 **A.**  **1983 Claims**

 To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him or her of a right secured by the Constitution or the laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). When a plaintiff brings a claim against an entity defendant, the plaintiff must establish the violation of a constitutional right and that "the municipality's policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Accordingly, regardless of whether the claim is against an individual state actor or a governmental entity, the plaintiff must establish the violation of a constitutional right or a right created by federal law. Because the Plaintiffs attempts to establish the violation of a constitutional right are unsuccessful, their claims fail with respect to all defendants.

   **1.**  **Equal Protection Claim**

 The plaintiffs allege in the first count that the defendants' failure to investigate the accident amounted to a "deprivation of their constitutional right to equal protection of the law as guaranteed by the various provisions of the Constitution . . . ." [Record No. 1, ¶ 31] They seem to argue that the defendants' failure to conduct a proper investigation deprived them of the equal protection of KRS 16.060, which imposes a duty on various state actors "to detect and prevent crime, apprehend criminals, maintain law and order throughout the state, to collect, classify and maintain information useful for the identification of criminals and to enforce the criminal, as well as the motor vehicle and traffic laws of the Commonwealth." [Record No. 1, ¶¶ 15, 20]

The defendants contend that the plaintiffs have failed to state a claim for an equal protection violation because they have not alleged membership in a protected class or discriminatory treatment based on their membership in that class. [Record No. 20, Ex. 1, p. 12] The equal protection clause prohibits state actors from denying "to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This clause requires that "similarly situated individuals" be treated in a similar manner. *Nicholson v. City of West Lake*, 76 Fed. Appx. 626, 629 (6th Cir. 2003) (citation omitted). A plaintiff may state a claim for an equal protection violation by alleging "discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently from others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011). Where the plaintiff does not allege the burden of a fundamental right or membership in a suspect or quasi-suspect class, courts evaluate the claim under rational basis review. *Scarborough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). This requires that the plaintiff "demonstrate that the government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *Id.*

The plaintiffs have not specified which of these categories of equal protection violation they are asserting. However, because they have not alleged either the burden of a fundamental right or membership in a suspect class—or any type of group, for that matter—the Court will

assume that they intend to bring a "class of one" claim.[2]  In a class of one claim, the plaintiff "does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against [him or] her *in particular* and therefore treated her arbitrarily."  *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012) (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) (emphasis in original)).  To state a class of one equal protection claim, plaintiffs must allege that they, as individuals, have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, the plaintiffs fail to state a claim for an equal protection violation under a class of one theory.  To state such a claim, the plaintiffs must allege that the officers treated them in an adverse fashion relative to other similarly-situated individuals connected with the investigation and prosecution of an alleged crime, and that the defendants' adverse treatment was arbitrary and motivated by ill-will or animus towards the plaintiffs.  However, the plaintiffs fail to allege any facts that would support any of the elements of such a claim.  The Complaint contains no allegations relating to the defendants' treatment of similarly-situated individuals, much less an allegation that similarly situated individuals received more favorable treatment during criminal investigations.  Moreover, the plaintiffs fail to allege that they received adverse treatment that was arbitrary and motivated by ill-will or animus, or that the defendants lacked a rational basis for the allegedly improper decisions that they made relating

---

[2]  As discussed more fully below, the plaintiffs have not stated the burden of a fundamental right because there is no constitutionally-protected interested in the investigation and prosecution of another individual.

to the investigation. Instead, the plaintiffs merely state the conclusory allegation that the defendants' alleged inadequate investigation deprived them of equal protection of the laws. Thus allegation clearly does not contain sufficient factual support the requisite pleading standard. Accordingly, the Court concludes that the plaintiffs have failed to allege any facts that would support a claimed equal protection violation.

### 2.     Due Process Claim

The plaintiffs assert in the second count that the defendants' failure to properly "investigate, collect and preserve evidence, and prosecute wrongdoers" deprived them of their "constitutionally protected rights . . . as set forth in KRS 16.060 or their right to be free from emotional distress." [Record No. 1 ¶ 34] The defendants argue in response that this claim should be dismissed because the plaintiffs do not have any constitutional rights relating to the investigation of the accident. [Record No. 20, Ex. 1, p. 6] The defendants are correct that the plaintiffs do not have a liberty interest in a competent investigation of their family member's death. As such, the plaintiffs have failed to state a claim for a violation of the due process clause.

Although the Complaint itself is not clear regarding whether the plaintiffs raise a substantive or procedural due process claim, their pleadings clarify that they "allege that KRS 16.060 provides a statutory right to investigation and prosecution of the circumstances of the child's death such that a liberty interest is created." [Record No. 23] Accordingly, the claim will be construed as one for a substantive due process violation; specifically, a violation of an alleged liberty interest in a competent investigation and prosecution.

The substantive due process clause of the Fourteenth Amendment protects certain individual liberty interests against "governmental actions regardless of the fairness of the

procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). An interest only qualifies as a liberty interest that is protected by the substantive due process clause if it is "so rooted in the traditions and conscience of our people to be ranked as fundamental" and "implicit in the concept of ordered liberty . . . ." *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) (citations omitted). And a right is only recognized as an implicit liberty right if it is so vital that "neither liberty nor justice would exist if it were sacrificed." *Id*. (citation omitted).

The plaintiffs argue that K.R.S. § 16.060 creates a liberty interest in a competent investigation and prosecution that is protected by the due process clause. As an initial matter, the language of the statute does not create any rights for members of the public. Instead, it imposes duties on state law enforcement actors, such as to "detect and prevent crime," and authorizes them to enforce the laws. K.R.S. § 16.060. The statute in no way entitles members of the general public to have these tasks performed in any particular way for their personal benefit such that it could be construed as creating a right to these services. *See generally Hall v. Warren Cnty. Reg'l Jail*, No. 1: 09-CV-00098, 2010 WL 231740 at *4 (W.D. Ky. Jan. 14, 2010) (noting that K.R.S. § 16.060 tasks the Kentucky State Police "with statewide law enforcement").[3]

However, even assuming that the state statute created an individual right to a competent investigation and prosecution, such a "right", standing alone, does not qualify as a liberty interest that is protected by the substantive due process clause. Generally, "[s]tate-created

---

[3]   Moreover, this section of the Kentucky Revised Statutes applies to the Department of Kentucky State Police, which suggests that it has no bearing on the municipal law enforcement defendants that the plaintiffs name in this action.

rights . . . do not rise to the level of 'fundamental' interests protected by substantive due process." *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990). Instead of automatically being treated as liberty interests that are protected by substantive due process, state-created rights must independently qualify for constitutional protection. Specifically, a state right is only protected by the constitution if it is so fundamental and implicit in the concept of ordered liberty that a failure to protect it would threaten liberty and justice. *See id.* (finding that a state-created contractual right was not a liberty interest protected by substantive due process).[4]

Generally, citizens do not have a right to receive governmental services, much less a right so fundamental that it rises to the level of a liberty interest that it is protected by substantive due process. The due process clause is primarily concerned with preventing "government from abusing its power, or employing it as an instrument of oppression." It is not generally used to impose affirmative obligations on government actors to provide aid to citizens or to provide citizens with a constitutionally-guaranteed right to receive these services. *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195, 96 (1989). Because the due process clause does not guarantee a right to government aid, it does not generally

---

[4] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992), does not support the plaintiffs' argument. In *Collins*, the petitioner argued that a state statute that imposed a duty on state employers to maintain a safe work environment created a constitutionally-protected right. The Court rejected the notion that § 1983 created a cause of action for a violation of the state statute, concluding that the claim essentially amounted to a "typical state-law tort claim" that should not be addressed in federal court through § 1983. *Id.* at 128. It then stated that, even it were to assume that the state statute created a liberty interest, it would not find a violation of a constitutional right. Contrary to the plaintiffs' interpretation, the Court did not *hold* that a state statute creates a liberty interest, but instead entertained the possibility for the sake of argument and went on to reject the petitioner's claim.

provide a cause of action when that aid is rendered inadequately. *See Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005).[5]

Because the government does not have a constitutionally-imposed obligation to provide services to their citizens, it follows that citizens do not have a fundamental right to governmental law enforcement services that is protected by the substantive due process clause. While government officials may be legally required to investigate and prosecute crimes, the duty is performed for the benefit of the public generally and is not owed "to any one member of the public" individually. *Fulson v. City of Columbus*, 801 F. Supp. 1, 6 (S.D. Ohio 1992) (citing *Doe v. Mayor and City Council of Pocomoke City*, 745 F. Supp. 1137 (D. Md. 1990)). Accordingly, individual citizens do not have a constitutional right to compel law enforcement officers to act, or to require that they investigate and prosecute crime, in a particular way. *Id*; *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *Seigel v. City of Germantown*, 25 Fed. Appx. 249, 250 (6th Cir. 2001) ("[A] finding of incompetent or negligent investigation . . . is insufficient to establish a constitutional violation."). In summary, the plaintiffs do not have a substantive due process right to a competent investigation or prosecution and they cannot maintain a cause of action for the alleged inadequate performance of those duties.

---

[5] There are two exceptions under which the government has an obligation to provide aid and a plaintiff may maintain a cause of action for incompetent provision of this aid: (1) where the government is holding the plaintiff in custody or (2) where the government has taken some action that placed the plaintiff in danger. *Schultz*, 429 F.3d at 590. The plaintiffs in this case have not alleged either circumstance.

### B.     State Law Tort Claims

Because the plaintiffs have brought two claims for relief under a federal statute, 28 U.S.C. § 1983, the Court is presiding over this matter on the basis of federal question jurisdiction. However, the plaintiffs also raise state tort law claims arising from the same incident (i.e., the death of their family member and the related investigation and prosecution) over which this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) ("district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

As a general rule, when all federal claims are dismissed before trial under Rule 12(b)(6), "the balance of considerations usually will point to dismissing the state law claims" before reaching their merits. *Musson Theatrical Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). However, the balance of considerations will weigh in favor of federal courts retaining and deciding state law claims "when it is absolutely clear how the pendent claims can be decided," since there is no reason to have a state court address claims that are clearly meritless. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (cited by *Musson*, 89 F.3d at 1256). Because the resolution of the plaintiffs' state claims against the defendants is clear, the Court will decide the state law claims that the defendants have moved to dismiss.

Further, when deciding a state law claim based on supplemental jurisdiction, a federal court is "bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). Accordingly, the plaintiffs' state law claims will be evaluated under Kentucky law.

1. **Intentional Infliction of Emotional Distress**

The plaintiffs allege in the third count that the defendants "acted intentionally or recklessly," causing them "severe emotional distress" through conduct that "was so outrageous and intolerable that it offends the generally accepted standards of decency and morality." [Record No. 1, p. 10] The defendants assert that this claim should be dismissed because the plaintiffs have failed to allege that the defendants took any action with the intention of causing them severe emotional distress. [Record No. 20, Ex. 1, p. 14] Because the plaintiffs have failed to state a claim for intentional infliction of emotional distress, this claim will be dismissed.

In Kentucky, to state a claim for intentional infliction of emotional distress, an aggrieved party must assert that the alleged tortfeasor caused him or her emotional distress and did so with "the specific purpose of causing emotional distress (intentional) or intended a specific injury and knew or should have known that it would cause emotional distress . . . ." *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012) (citation omitted). Additionally, "the conduct in question must be extreme, or outrageous and intolerable. It must violate generally accepted standards of decency and morality. It must be more than bad manners, and must cause severe emotional distress, not just hurt feelings." *Id.* at 581 (citation omitted).

The plaintiffs fail to state a claim for the intentional infliction of emotional distress under this standard. Instead, they merely recite the elements of the cause of action without specifying factual circumstances that could possibly be construed as supporting an allegation of "extreme," "outrageous," or "intolerable" behavior. While they make the conclusory statement that the defendants acted intentionally or recklessly, they provide no factual assertions suggesting that the defendants acted intentionally or recklessly in causing their

alleged emotional distress. The plaintiffs do no more than assert that the defendants investigated the incident inadequately. Such an allegation hardly rises to the level necessary to maintain such a claim. Further, there is no basis to contend that the defendants' conduct was outrageous or was calculated to cause emotional distress. In short, this claim clearly fails to satisfy pleading standards for stating a claim of intentional infliction of emotional distress.

### 2. Negligence

In their fourth claim, the plaintiffs allege that the defendants acted negligently in the investigation and prosecution of Luke Phillips. [Record No. 1, p. 10-11] Specifically, they assert that the defendants owed them a duty of care because they assumed "a special relationship with the plaintiffs to investigate the crash, collect and preserve evidence, apprehend Luke Phillips, and prosecute Phillips' conviction for the killing of Jordan Flinchum." [*Id.*]

The defendants argue that the plaintiffs cannot maintain an action for negligence relating to the investigation and prosecution of the underlying incident because they did not owe the plaintiffs a duty to investigate or prosecute the alleged crime. The defendants are correct regarding this argument.[6]

To state a claim for negligence under Kentucky law, a plaintiff must allege: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). Where a plaintiff seeks "to establish an

---

[6] It is highly unlikely that the defendants would ever owe the plaintiffs a duty relating to the prosecution of crime, given that Defendant Brandenburg is a law enforcement officer who is not charged with the prosecution of crime.

affirmative duty on public officials in the performance of their official duties," the plaintiff must allege "a special relationship between the victim and the public officials." *Fryman v. Harrison*, 896 S.W.2d 908, 910 (Ky. 1995) (citation omitted). To allege such a special relationship, a plaintiff must satisfy a two-prong test, demonstrating "that the victim was in state custody or was otherwise restrained by the state at the time in question, and that the violence or other offensive conduct was perpetrated by a state actor." *Id*.

Here, the plaintiffs have failed to state a claim for negligence because they have failed to allege a special relationship as required by *Fryman*. The plaintiffs have alleged an injury that was caused by a state actor, satisfying the second prong of the test. However, the plaintiffs have not alleged that they were in custody or otherwise restrained by the state at the time of the alleged injury. Indeed, this prong could not have been satisfied because there is no indication that the plaintiffs were present during the investigation or were meaningfully involved in the process.

The plaintiffs argue, however, that *Gaither v. Justice & Pub. Safety Cabinet*, 447 S.W.3d 628 (Ky. 2014), compels a finding that they had a special relationship with the defendants and that the defendants owed them a legal duty to properly investigate the incident. In *Gaither*, the Kentucky State Police recruited an eighteen-year-old to act as an informant and maintained an ongoing relationship with him. However, it failed to conceal his identity, resulting in the individual being killed during a botched drug-buy. The court acknowledged that the law enforcement officers did not owe the victim a legal duty under the *Fryman* two-pronged special relationship test, since the victim was never in custody or otherwise restrained. *Id*. at 637. But the court determined "the unique police-informant relationship presented by

this case" required deviation from the special relationship test because the nature of the relationship "created a duty owed by the police to their informant." *Id*.

In concluding that the *Fryman* rule was not controlling, the *Gaither* Court emphasized the nature of the state actors' substantial relationship with the claimant. It concluded that the injury "was uniquely foreseeable," noting that the "state agency actually created a connection with the injured claimant, and then repeatedly fostered the continuation of that relationship." *Id*. Importantly, "the state officials . . . actively sought out the individual who was destined to become the victim" by "soliciting his services as a confidential informant" and then oversaw his work, which gave him a right to expect their protection. *Id*. at 638, 39. As a result of this significant and calculated involvement, the "circumstances created a 'special' relationship . . . that does not exist between the KSP and members of the general public who may by happenstance indirectly fall victim to police negligence." *Id*. at 639 (emphasis added).

The *Gaither* Court clearly deviated from the rule announced in *Fryman* because doing so was necessary to address the unique circumstances presented. *See Wright v. Beard*, No. 1:14-CV-00090-GNS-HBB, 2015 WL 1726419, at *4 (W.D. Ky. Apr. 15, 2015) (noting that the court in *Gaither* "was careful to couch its holding in the context of the unique circumstances of that case—a confidential informant whose identity had been compromised and who was intentionally put in danger"). Importantly, in both *Fryman* and *Gaither*, the court emphasized that individual members of the public cannot maintain a cause of action against a state actor for the performance of "a general duty owed to the public at large and not specifically to [the victim]." *See Fryman*, 896 S.W.2d at 910; *see also Gaither*, 447 S.W.3d at 639 (clarifying that state actors do not owe a duty to "members of the general public who may by happenstance indirectly fall victim to police negligence"). Accordingly, the *Gaither* exception does not

-15-

apply absent significant actions from state actors creating a relationship with a specific individual. Otherwise, state actors' duties relating to law enforcement are limited to a general one owed to the public at large rather than an actionable duty owed to any individual member of the public.

Here, the relationship between the defendants and the plaintiffs was not so direct and involved as to justify a determination that the defendants owed their duty to investigate the crime to the plaintiffs (personally) under *Gaither* rather than to the public (generally). Unlike the state actors in *Gaither*, the defendants did not seek out the plaintiffs and maintain an ongoing relationship with them during which they exercised control over them in the performance of a particular role. Instead, the plaintiffs' exposure to the defendants was incidental to their performing law enforcement tasks associated with their positions as public officials. These plaintiffs were in the same position as any other member of the public whose family members allegedly fall victim to crimes that law enforcement investigates. While the circumstances of this case are unfortunate, there is no indication of the type of deliberate, direct, or ongoing relationship that would justify the finding of a special relationship and imposition of a legal duty under *Gaither*. Instead, the defendants' duty to investigate was a general one owed to the public large that is not actionable in this case.

## IV.

The plaintiffs' final claim is a state law claim for negligence against an unidentified defendant (John Doe), the owner of the vehicle that Luke Phillips was driving at the time of the underlying incident. [Record No. 1] As is true of the state law claims against the government defendants, this Court may, in its discretion, exercise supplemental jurisdiction over this claim. *Musson Theatrical Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)

(citations omitted). It is a general principle that, where "federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims." *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987); *see also Musson*, 89 F.3d at 1255 ("After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims."). Because the Doe defendant has not been identified, has not been served, and has not responded to the allegations, it would not be appropriate to address the claims asserted by the plaintiffs against this party. Moreover, it is neither in the best interest of judicial economy nor comity for this Court to retain jurisdiction over this single state law claim, having dismissed all other claims in the case. *See Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (noting that federal courts should avoid "needlessly deciding state law issues"). Accordingly, the claim against this defendant will be dismissed, without prejudice.

## V.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. The defendants' motion to dismiss or, in the alternative, motion for judgment on the pleadings [Record No. 20] is **GRANTED**.

2. All counts asserted against Defendants City of Beattyville, City of Beattyville Police Department, Greg Brandenburg, and John Smith are **DISMISSED**, with prejudice.

3. The claims asserted against Defendant John Doe are **DISMISSED**, without prejudice.

4. All remaining motions [Record Nos. 42, 51] are **DENIED** as **MOOT**.

5. The pre-trial conference and trial previously scheduled are **CANCELED**. Further, the parties are relieved of the obligation of submitting further filings as outlined in the Court's Scheduling Order.

This 1st day of December, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge